Stefan Savic
Brian L. Grossman
**SHIPKEVICH PLLC**
165 Broadway, Suite 2300
New York, New York 10006
Telephone:     (212) 252-3003
Facsimile:      (888) 568-5815
ssavic@shipkevich.com
bgrossman@shipkevich.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ALUMINUM SILICON MILL PRODUCTS GMBH,**<br><br>Plaintiff,<br><br>- against –<br><br>**DEUTSCHE BANK AMERICAS HOLDINGS CORPORATION, and DEUTSCHE BANK TRUST COMPANY AMERICAS**<br><br>Defendants. | Index No.:<br><br>**COMPLAINT**<br><br>**PLAINTIFF DEMANDS A TRIAL BY JURY** |

Plaintiff Aluminum Silicon Mill Products GmbH ("ASMP" or "Plaintiff"), by and through

its attorneys Shipkevich PLLC, hereby allege as follows:

## <u>INTRODUCTION</u>

1.  This case arises out of Defendants Deutsche Bank Americas Holdings Corporation and

Deutsche Bank Trust Company Americas (together "DB") wrongfully seizing ASMP's funds

under the guise of the United States' Russia-related sanctions, otherwise known as the Ukraine

13662 program.

1

2.  Prior to the funds being illegitimately seized, ASMP, a Swiss company, signed a contract with a Russian company that it has regularly done business with since 2001, received the goods it contracted for from that company, and wired the funds to that Russian company.

3.  But the funds never made it to the Russian company and were instead intercepted and frozen by DB, a bank that neither ASMP nor the supplying company use directly for banking or making wire transfers.

4.  DB made no mention as to why the funds were frozen until ASMP's bank, ING Geneva, contacted DB to determine what had happened to the money.

5.  DB told ING Geneva that the funds were frozen due to Russia-related sanctions.

6.  However, and although ING Geneva tried several times to obtain more information, DB provided no further explanation until mid-2019, when attorneys for ASMP contacted DB to attempt to determine why the funds had been frozen pursuant to the Ukraine 13662 program.

7.  It was only then that DB informed ASMP that the funds were frozen because the supplying company's bank—and not the supplying company itself—was purportedly owned more than 50% by a Specially Designated National ("SDN") under the Russia-related sanctions named Viktor Vekselberg ("Vekselberg").

8.  After DB informed ASMP of this, ASMP looked into Vekselberg in order to both determine if Vekselberg was an SDN and to determine where ASMP's or ING 's "Know Your Customer" due diligence had failed in being unable to identify Metcombank as an SDN via Vekselberg's ownership.

9.  But ASMP's and ING's due diligence had not failed; at the time of the underlying transaction Vekselberg was not a 50% or greater owner of the receiving bank and Metcombank was not an SDN.

10. Upon being informed of its mistake with documentary evidence that Vekselberg was not a 50% or greater owner of the bank at the time of the transaction, instead of releasing ASMP's funds or providing ASMP with the amount frozen due to DB's mistake, DB instead doubled down and told ASMP to get a license for the funds to be released, despite ASMP not needing a license since there was no SDN involved in the transaction.

11. To make matters worse, DB still claimed that they had properly frozen the funds pursuant to their own due diligence but refused to provide ASMP with any information supporting that purported due diligence.

12. This seizure of hundreds of thousands of dollars resulted in ASMP breaching its contract with its supplier, incurring costs resulting from that breach, damage to a long-standing relationship between ASMP and its supplier, damage to ASMP's credit, damage to ASMP's standing in the industry, and more.

## **PARTIES**

13. Aluminum Silicon Mill Products GmbH is a Swiss limited liability company.

14. Deutsche Bank Americas Holdings Corporation is a Delaware corporation with the principal place of business at 60 Wall Street, New York, New York, 10005.

15. Deutsche Bank Trust Company Americas is a Delaware corporation with the principal place of business at 60 Wall Street, New York, New York, 10005.

## **JURISDICTION AND VENUE**

16. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000, and there is complete diversity of citizenship as DB is a citizen of New York, New York and ASMP is a citizen of a foreign country for purposes of diversity jurisdiction.

17. None of the members of ASMP are citizens of New York State for purposes of diversity jurisdiction.

18. This Court has personal jurisdiction over the Defendants because the Defendants conduct business in this district and/or are present in this district for jurisdictional purposes. Defendants have sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice, and the conduct took place in New York.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as Defendants reside in the District.

## STATEMENT OF FACTS

*The Underlying Transaction and Payment*

20. Since 2001, ASMP has regularly and almost exclusively purchased its supplies from a company named Kamensk Uralsky Metallurgical Works Joint Stock Company ("KUMW"), those supplies being various semi-finished products from aluminum alloys.

21. ASMP has been the exclusive Marketing Agent for KUMW for years, and is a recognized and well-established market participant and reseller of aluminum semi-finished products.

22. Consequently, this was not the first time ASMP was required to transfer money to KUMW in exchange for goods.

23. As per the contract dated July 6, 2007, KUMW delivered several tons of semi-finished aluminum products to ASMP, for which ASMP owed KUMW $212,266.00 pursuant to several invoices.

24. ASMP was due to pay KUMW the $212,266.00 within five days of the goods clearing customs.

25. For every day after the fifth day that the payment was late, ASMP would owe to KUMW 0.05% of the amount due.

26. On or about October 15, 2018, ASMP sought to make its payment to KUMW of $212,266.00 for the goods it received.

27. The payment was sent by ASMP, through its bank ING Geneva, to KUMW's bank, Metcombank in Russia.

28. It is customary for USD transfer's to be routed through a United States bank, acting as a so called "Corresponding Bank for USD," even if the transfer is to be affected between banks residing in other countries.

29. The payment never arrived in KUMW's Metcombank account.

30. ASMP has previously—and regularly—transferred funds in USD to KUMW, very often via Deutsche Bank.

*The Investigation into the Missing Funds*

31. On or about October 15, 2018, following the funds not arriving in KUMW's account, ING Geneva sent a MT103 message[1] to DB regarding the missing funds and received a response later that month. (Exhibit A.)

32. In that response, DB informed ING Geneva that ASMP's funds had "been placed into a blocked account at Deutsche Bank Trust Company." (Exhibit A.)

33. DB informed ING Geneva that the reason for the funds being put in a blocked account was because "the subject payment order has already been blocked due to sanctions under the Ukraine 13662 Program." (Exhibit A.)

---

[1] An MT103 message is a SWIFT message format concerning wire transfers and other electronic payments.

34. Following the October correspondence, DB refused to further respond to ASMP's bank, ING Geneva, or otherwise communicate regarding the blocked funds.

35. With no means to contact DB otherwise, on April 12, 2019, ASMP wrote a letter directly to DB requesting the release of the funds and what can be done to release the funds. (Exhibit B.)

36. DB never responded to ASMP's April 12, 2019, letter.

*The Ukraine 13662 Program*

37. The basis of the Ukraine 13662 program is "to deal with the threat posed by the actions and policies of certain persons who had undermined democratic processes and institutions in Ukraine; threatened the peace, security, stability, sovereignty, and territorial integrity of Ukraine; and contributed to the misappropriation of Ukraine's assets."[2]

38. Specifically, 13662 "authorizes the imposition of sanctions on certain entities operating in specified sectors of the Russian Federation economy."[3]

39. The United States Office of Foreign Asset Control ("OFAC") has a published list of entities (also known as Specially Designated Nationals ("SDNs")) that are covered by the Ukraine 13662 program.[4]

40. Neither ASMP nor KUMW are owned 50% or more by an SDN.

41. Neither ING Geneva nor Metcombank appear on the list of SDNs, nor are either ING Geneva or Metcombank owned 50% or more by an SDN.

42. Neither ASMP nor KUMW appears on this list as an SDN.[5]

---

[2] Ukraine/Russian Related Sanctions Program, OFAC, dated June 16, 2016, at 3 (https://www.treasury.gov/resource-center/sanctions/Programs/Documents/ukraine.pdf).

[3] *Id.*

[4] Specially Designated Nationals and Blocked Persons List, OFAC, dated May 23, 2019 (https://www.treasury.gov/ofac/downloads/sdnlist.pdf).

[5] *Id.*

43. The OFAC may issue a license to US entities to conduct transactions that would otherwise be prohibited.[6]

44. However, 13662 applies to only "activities by a U.S. person or within the United States."[7]

*ASMP's Due Diligence and Attempts to Retrieve the Funds from DB*

45. Prior to any transaction, ASMP conducts various and regular Know Your Customer ("KYC") searches, investigations, and due diligence.

46. After each imposition of sanctions, ASMP conducts a KYC search and investigation.

47. ASMP conducted such an investigation on Metcombank in 2018, which yielded no issues.

48. Despite this, but after ASMP had already sent the money to KUMW, DB claimed that it found an issue under the Ukraine 13662 Program.

49. As a result of the purported issue under the Ukraine 13662 Program, DB froze ASMP and KUMW's transaction.

50. Following correspondence between counsel for ASMP and DB, on or about June 13, 2019, DB, for the first time, informed ASMP of the reason the funds were frozen.

51. DB informed ASMP that an individual named Viktor Vekselberg ("Vekselberg") was at least a 50% owner of Metcombank; that Vekselberg was an SDN; and that this was the reason the funds had been frozen.

---

[6] *Supra* note 2, at 6.

[7] *See* Directive 1 (as Amended on September 29, 2017) under Executive Order 13662 (https://www.treasury.gov/resource-center/sanctions/Programs/Documents/eo13662_directive1_20170929.pdf); Directive 2 (as Amended on September 29, 2017) under Executive Order 13662 (https://www.treasury.gov/resource-center/sanctions/Programs/Documents/eo13662_directive2_20170929.pdf); Directive 3 under Executive Order 13662 (https://www.treasury.gov/resource-center/sanctions/Programs/Documents/eo13662_directive3.pdf); Directive 4 (as Amended on October 31, 2017) under Executive Order 13662 (https://www.treasury.gov/resource-center/sanctions/Programs/Documents/eo13662_directive4_20171031.pdf).

52. However, upon ASMP conducting its own investigation on Metcombank following DB's claim as to Metcombank and Vekselberg, it became apparent that Vekselberg was not currently at least a 50% owner of Metcombank, nor was Vekselberg a 50% or greater owner of Metcombank at the time of the underlying transaction.

53. Since Vekselberg was not a 50% or greater owner of Metcombank at the time of the transaction, Metcombank was not an SDN at the time of the transaction due to Vekselberg's ownership.

54. Indeed, ASMP's research showed that Vekselberg was divested of his 50% or greater interest in Metcombank in December of 2016, approximately two years before the transaction at issue and one and a half years before the sanctioning of Vekselberg

55. Vekselberg was only a 9.9% owner of Metcombank at the time of the transaction.

56. On or about June 26, 2019, counsel for ASMP presented DB with the World Check report that demonstrated that Vekselberg was not a 50% or greater owner of Metcombank at the time of the transaction.

57. DB still refused to release the funds, admit its mistake, or provide any other reason why the funds were frozen.

58. Instead, DB responded, stating that DB "blocked the referenced funds in good faith under U.S. sanctions regulations, pursuant to proprietary information that the [DB] had at the time of the transaction . . . ."

59. ASMP requested that DB provide the "proprietary information" that supposedly demonstrated that Metcombank was "majority owned by designated entities and/or individuals" but DB refused to provide such information despite ASMP providing its information demonstrating that Metcombank was not majority owned by Vekselberg.

60. As of the filing of this Complaint, DB has not provided any contrary information to ASMP to demonstrate that 50% or more of Metcombank was, at the time of underlying transaction, owned by an SDN.

61. DB's refusal to even discuss the matter with ASMP in good faith, or share the information that DB claims it utilized in determining Metcombank was an SDN at the time of the underlying transaction is the reason this lawsuit has been filed.

62. DB improperly froze ASMP's transfer to KUMW, resulting in damages to ASMP.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Conversion)

63. ASMP repeats and realleges the allegations contained in paragraphs "1" through "62" as if fully set forth herein.

64. ASMP's specifically transferred $212,266.00 to KUMW, that was purportedly placed in a frozen account by DB.

65. Prior to KUMW receiving the $212,266.00, Plaintiff had ownership and control over the funds.

66. Following the transfer, but before KUMW received the funds, DB improperly froze the $212,266.00 and placed it in a DB account, despite the funds being owned by ASMP and being transferred to KUMW.

67. DB was not authorized to freeze the $212,266.00 under any applicable law, statute, regulation, or executive order.

68. DB's improper freezing of the $212,266.00 resulted in ASMP suffering damages including, but not necessarily limited to, the loss of the funds, interest on the funds, and loss of goodwill.

9

## AS AND FOR A SECOND CAUSE OF ACTION
### (Tortious Interference with Contract)

69. ASMP repeats and realleges the allegations contained in paragraphs "1" through "68" as if fully set forth herein.

70. ASMP and KUMW have a valid and binding contract regarding the purchase and sale of semi-finished products from aluminum alloys.

71. DB was aware of this contract, both due to the payment of the monies and the contact DB had with ASMP following the freezing of the funds.

72. DB interfered with the performance of the contract between ASMP and KUMW by improperly preventing the funds sent by ASMP to reach KUMW.

73. DB was not justified in freezing the funds under any applicable law, statute, regulation, or executive order.

74. As a result of DB's tortious interference with ASMP and KUMW's contract, ASMP has been damaged including, but not necessarily limited to, the loss of the funds, interest on the funds, and loss of goodwill.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Tortious Interference with Business Relations)

75. ASMP repeats and realleges the allegations contained in paragraphs "1" through "74" as if fully set forth herein.

76. ASMP and KUMW have a valid business relationship as they have previously contracted with one-another.

77. Following the correspondence between counsel for ASMP and DB, DB became aware of the relationship between ASMP and KUMW, specifically as to the underlying transaction.

78. DB intentionally caused $212,266.00 that was being transferred from ASMP to KUMW to be frozen before the funds arrived to KUMW.

79. ASMP was damaged, at a minimum, through interest owed on the amount due and loss of goodwill as a result of non-payment.

80. ASMP's damages of interest on the frozen payment and loss of goodwill was directly caused by DB's freezing of $212,266.00, which resulted in ASMP beginning to incur interest on the non-payment and ASMP's loss of goodwill for failure to timely pay its outstanding invoice.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Negligence)

81. ASMP repeats and realleges the allegations contained in paragraphs "1" through "80" as if fully set forth herein.

82. DB owed ASMP—as well as others whose monies it manages or touches—a duty to properly manage AMSP's funds and properly investigate any potential issues with ASMP's transfer.

83. DB breached this duty by improperly and incorrectly freezing ASMP's transfer pursuant to the Ukraine 13662 program.

84. DB's improper freezing of the $212,266.00 resulted in ASMP suffering damages including, but not necessarily limited to, the loss of the funds, interest on the funds, and loss of goodwill.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Gross Negligence)

85. ASMP repeats and realleges the allegations contained in paragraphs "1" through "84" as if fully set forth herein.

86. DB owed ASMP—as well as others whose monies it manages or touches—a duty to properly manage AMSP's funds and properly investigate any potential issues with ASMP's transfer.

87. DB breached this duty by improperly and incorrectly freezing ASMP's transfer pursuant to the Ukraine 13662 program.

88. DB's improper freezing of the $212,266.00 resulted in ASMP suffering damages including, but not necessarily limited to, the loss of the funds, interest on the funds, and loss of goodwill.

89. DB's conduct evinces a reckless disregard as to ASMP's funds.

90. DB recklessly failed to conduct proper checks on the parties in the ASMP and KUMW transaction but still froze the transaction despite failing to conduct the proper due diligence.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**WHEREFORE**, Plaintiff respectfully requests the Court to:

a.  Award actual damages to be established at trial;

b.  Award Plaintiff the costs of this action together with reasonable attorneys' fees;

c.  Award Plaintiff punitive damages in an amount to be determined at trial to punish Defendants for their wanton, reckless, and malicious acts described herein, and to protect society against similar acts;

d.  Award Plaintiff pre and post-judgment interest in the statutory amount; and

e.  Grant such other and further relief as this Court deems necessary and proper.

Dated:  August 30, 2019                  Respectfully submitted,

_____

Stefan Savic

Brian L. Grossman

**SHIPKEVICH PLLC**

165 Broadway, STE 2300

New York, New York 10006

Telephone:     (212) 252-3003

Facsimile:      (888) 568-5815

ssavic@shipkevich.com

*Attorneys for Plaintiff*